DEPARTMENT OF CIVIL RIGHTS *ex rel* JONES v DEPARTMENT
OF CIVIL SERVICE

Docket No. 44973. Submitted March 6, 1980, at Lansing.—Decided
November 4, 1980. Leave to appeal applied for.

From 1973 or 1974 until October, 1978, the Michigan Department
of Civil Service (civil service) made available to all classified
and certain categories of unclassified state employees a long-
term disability (LTD) insurance plan which expressly excluded
from coverage disabilities related to pregnancy, childbirth,
miscarriage or abortions. The LTD plan was designed to cover
disability "solely because of disease or accidental bodily inju-
ry". No disability to which males alone are subject was ex-
pressly excluded from the plan. In October, 1978, the LTD plan
was changed to allow benefits for pregnancy related disabilities.
Evelyn Jones, Joyce Butler and Linda Peake were denied LTD
benefits under the former plan because their disabilities were
pregnancy related. They filed complaints with the Department
of Civil Rights alleging sex discrimination. The Civil Rights
Commission (CRC) determined that civil service was in viola-
tion of the Fair Employment Practices Act and the Civil Rights
Act and that the conduct was part of a pattern and practice of
unlawful sex discrimination and ordered payment of LTD
benefits to the claimants. It further ordered civil service to
cease and disist from its unlawful sex discrimination. Civil
service appealed to the Ingham Circuit Court, which reversed,
Jack W. Warren, J. The Department of Civil Rights appeals.
*Held:*

   1. The Civil Rights Commission has jurisdiction to entertain

REFERENCES FOR POINTS IN HEADNOTES
[1] 15 Am Jur 2d (Rev), Civil Rights §§ 154, 248.
[2] 16 Am Jur 2d (Rev), Constitutional Law § 219.
[3] 15 Am Jur 2d (Rev), Civil Rights § 292.
[4] 15 Am Jur 2d (Rev), Civil Rights §§ 156, 177.
  81 Am Jur 2d, Workmen's Compensation § 6.
[5] 15 Am Jur 2d (Rev), Civil Rights §§ 158, 187.
  Application of state law to sex discrimination in employment. 87
  ALR3d 93.

age and sex discrimination complaints of civil service employees.

2. Denial of the long-term disability benefits for disabilities which are pregnancy related violates the anti-discrimination provisions of the Fair Employment Practices Act and the Civil Rights Act.

3. Since the circuit court did not address the issue of whether the civil service's denial of LTD benefits for pregnancy related disabilities constituted a pattern and practice justifying an award of relief to all persons similarly situated, it must do so on remand.

Reversed and remanded.

M. J. KELLY, P.J., concurred, finding that the legislative history of the Fair Employment Practices Act and the Civil Rights Act indicate a legislative intent to include pregnancy and pregnancy related disabilities in the prohibition of sex-based discrimination.

### OPINION OF THE COURT

1. CIVIL RIGHTS — SEX DISCRIMINATION — CIVIL SERVICE — JURISDICTION — STATUTES.

The Civil Rights Commission has jurisdiction to entertain age and sex discrimination complaints of civil service employees.

2. CONSTITUTIONAL LAW — JUDICIAL CONSTRUCTION.

The primary objective of constitutional construction is to ascertain and give effect to the intent of the people adopting it.

3. CIVIL RIGHTS — CONSTITUTIONAL LAW.

The intent of the people in establishing the Civil Rights Commission was to end invidious forms of discrimination through the efforts of a single commission (Const 1963, art V, § 29).

4. CIVIL RIGHTS — LONG TERM DISABILITY — PREGNANCY — STATUTES.

Denial of long term disability benefits for disabilities which are pregnancy related violates the anti-discrimination provisions of the Fair Employment Practices Act and the Civil Rights Act (MCL 423.303a, 37.2202[1][a]; MSA 17.458[3a], 3.548[202][1][a]).

### CONCURRENCE BY M. J. KELLY, P.J.

5. CIVIL RIGHTS — PREEMPTION.

*The Federal Civil Rights Act does not preempt state law regarding sex discrimination.*

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, and *Dianne Rubin,* Assistant Attorney General, for the Department of Civil Rights.

*MacLean, Seaman, Laing & Guilford,* for the Department of Civil Service.

Amicus Curiae: Michigan Education Association (by *Mary Hannorah Job).*

Before: M. J. KELLY, P.J., and D. F. WALSH and BEASLEY, JJ.

BEASLEY, J. The Department of Civil Rights appeals as of right from an April 16, 1979, circuit court order upholding the Michigan Department of Civil Service's exclusion of pregnancy related disabilities from coverage under its long-term disability insurance plan, thereby reversing a January 25, 1977, order of the Michigan Civil Rights Commission.

From 1973 or 1974 until October, 1978, the Michigan Department of Civil Service made available to all classified and certain categories of unclassified state employees a long-term disability (LTD) insurance plan which expressly excluded from coverage disabilities related to pregnancy, childbirth, miscarriage or abortion. The LTD plan was designed to cover disability "solely because of disease or accidental bodily injury". Examples of compensable disabilities under the plan include disabilities incurred while skiing or driving while intoxicated, and hypertension and diabetes, unless associated with pregnancy. No disability to which males alone are subject was expressly excluded from the plan. In October, 1978, the LTD plan was changed to allow benefits for pregnancy related disabilities.

The instant appeal involves the claim of three women who were denied LTD benefits under the former plan because their disabilities were pregnancy related. In each case, Jones, Butler and Peake filed complaints with the Michigan Department of Civil Rights, alleging that they had been discriminated against on the basis of sex by civil service's denial of disability benefits for pregnancy.

After taking testimony and hearing arguments, the Michigan Civil Rights Commission (CRC), by order dated January 25, 1977, determined that civil service was in violation of the Fair Employment Practices Act (FEPA),[1] repealed and replaced by the Civil Rights Act,[2] as a result of its denial of pregnancy related disability benefits and found that the conduct of civil service was part of a pattern and practice of unlawful discrimination on the basis of sex. CRC ordered payment of disability benefits to Jones, Butler and Peake for the periods in question, and further ordered civil service to cease and desist from unlawful discrimination on the basis of sex with regard to pregnancy disability benefits.

Civil service filed a claim of appeal for *de novo* review in circuit court on February 15, 1977, alleging as erroneous, *inter alia,* the finding of jurisdiction made by civil rights, civil rights' conclusion that the FEPA applied to classified state employees, and its finding that the exclusion of pregnancy disability from LTD coverage constituted unlawful sex discrimination.

On March 28, 1979, Judge Warren issued an opinion reversing the CRC's order, based on two United States Supreme Court cases, *Geduldig v Aiello*[3] and *General Electric Co v Gilbert.*[4]

---

[1] MCL 423.301 *et seq.;* MSA 17.458(1) *et seq.*

[2] MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.;* 1976 PA 453.

[3] 417 US 484; 94 S Ct 2485; 41 L Ed 2d 256 (1974).

On appeal, the Department of Civil Rights raises four issues. Initially, it argues that the CRC has jurisdiction to hear sex discrimination claims brought by state employees classified under the civil service. We note that, although this issue was not decided in the court below, its determination is necessary to this case and, therefore, we will address it.

The CRC was created by art 5, § 29 of the Michigan Constitution of 1963, which provides in part as follows:

"It shall be the duty of the commission in a manner which may be prescribed by law to investigate alleged discrimination against any person because of religion, race, color or national origin in the enjoyment of the civil rights guaranteed by law and by this constitution, and to secure the equal protection of such civil rights without such discrimination."

Although this provision does not mention sex as one of the bases of discrimination protected against, the CRC, by virtue of the FEPA, and its successor, the Civil Rights Act (CRA), does have jurisdiction to entertain age and sex discrimination complaints.[5]

The crux of civil service's argument is that the CRC cannot exercise its jurisdiction over civil service since the SCS has plenary jurisdiction. In support of its position, civil service cites art 11, § 5 of the Michigan Constitution of 1963, which establishes a Michigan Civil Service and a commission with the power to:

"* * * classify all positions in the classified service

---

[4] 429 US 125; 97 S Ct 401; 50 L Ed 2d 343 (1976).

[5] *City of Ypsilanti v Civil Rights Comm,* 55 Mich App 103; 221 NW2d 923 (1974), *rev'd in part,* 393 Mich 254; 224 NW2d 281 (1974).

according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the classified service."

Civil service argues that it was empowered by the constitution to regulate all conditions of employment. Moreover, art 4, § 48 of the Michigan Constitution of 1963 provides that the Legislature is empowered to "enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service". Civil service reasons that these provisions clearly indicate that the CRC can have no jurisdiction over civil service. We do not agree.

Initially, we note that the civil service's powers are not without limit. *Council No 11, AFSCME v Civil Service Comm,*[6] is a case on point. In that case, the rule of the civil service commission which banned political activity by classified employees was challenged. There, plaintiff argued that this rule was invalid in light of the "political freedom act".[7] The position of defendant civil service was that the Legislature was without power to legislate in any area within the sphere of authority of the commission and that art 11, § 5 grants the commission exclusive jurisdiction to prohibit any political activities by civil servants since the commission can regulate all conditions of employment.

---

[6] 87 Mich App 420; 274 NW2d 804 (1978), *lv gtd* 406 Mich 920 (1979). Subsequent to preparation of this opinion, but well before its release, the Supreme Court affirmed in 408 Mich 385 (1980), which opinion does not alter this result.

[7] 1976 PA 169; MCL 15.401 *et seq.;* MSA 4.1702(1) *et seq.*

The court in *Council No 11* found that although the powers of the civil service are extensive, it was beyond its power to restrict an employee's political activity when that activity is not engaged in during working hours and does not actually affect his job performance.

Accordingly, although the commission was granted the authority to regulate all conditions of employment within the classified service, this power is not without limit. After deliberation, we conclude that the CRC has jursidiction over civil service employees in the area of job discrimination involved in this case.

An elementary precept of constitutional construction is that its primary objective is to ascertain and to give effect to the intent of the people adopting it.[8]

The establishment of the CRC expressed the intent of the people of Michigan to end invidious forms of discrimination through the efforts of a single commission. If civil service had exclusive jurisdiction over all employment concerns, the result would be to weaken the authority of the CRC to carry out its constitutional mandate to end discrimination.

Accordingly, for these reasons, we conclude that the CRC has jurisdiction over sex discrimination complaints filed by the three classified civil service employees in this case.

The Department of Civil Rights next argues that the civil service's denial of long-term disability benefits for pregnancy disability constitutes discrimination based on sex in violation of FEPA, the CRA and guidelines promulgated by the CRC.

---

[8] *Kearney v Board of State Auditors,* 189 Mich 666; 155 NW 510 (1915), cited with approval in *Eason v Secretary of State,* 90 Mich App 392; 282 NW2d 332 (1979).

Civil service argues, however, that the United States Supreme Court's decision in *General Electric Co v Gilbert, supra,* is controlling. In that case, the Court held that a corporate disability plan which excluded pregnancy disabilities from coverage did not violate Title VII of the Civil Rights Act of 1964,[9] which provides that it is an unlawful employment practice to discriminate on the basis of sex.

The Court in *Gilbert* reasoned that the plan's exclusion of pregnancy benefits from coverage did not result in gender based discrimination. Rather, the exclusion was viewed as part of an insurance package in which there were no risks from which either men were protected and women were not, or vice versa.

Neither this court nor the Michigan Supreme Court has had an opportunity to consider the applicability of *Gilbert* to state law.[10] However, other jurisdictions have discussed the *Gilbert* holding with reference to state statutory mandates. In *Anderson v Upper Bucks County Area Vocational Technical School,*[11] the court interpreted the Pennsylvania Human Rights Act as prohibiting the exclusion of pregnancy from those conditions for which sick leave was compensable.

There, the court acknowledged the *Gilbert* decision but held that it was not compelled to construe

[9] 42 USC 2000e-2(a)(1).

[10] We note that in *Taylor Federation of Teachers v Board of Education (On Remand),* 76 Mich App 692; 257 NW2d 664 (1977), *lv gtd* 402 Mich 924 (1978), *appeal dismissed as moot,* 405 Mich 848 (1979), *Gilbert* was held controlling on the issue of the validity of a clause in a bargained-for disability insurance contract barring recovery for pregnancy related disability where the issue was both briefed and argued on the basis of Federal law. The Court expressly declined to comment on whether a different result would be required under Michigan law.

[11] 30 Pa Comm 103; 373 A2d 126 (1977).

Pennsylvania law in the same manner as Title VII. The court concluded that since pregnancy is unique to women, the denial of benefits was sex discrimination under state law.

Similarly, in *Franklin Manufacturing Co v Iowa Civil Rights Comm,*[12] the Iowa Supreme Court characterized *Gilbert* as a "statutory interpretation, limited to construction of a federal statute" and refused to apply it in construing Iowa's own civil rights legislation.

We agree with both the reasoning and conclusion of the courts in *Anderson* and *Franklin Manufacturing Co.* Although Title VII and the Michigan Civil Rights Act are worded similarly, we are not compelled to construe Michigan law in the same manner as Title VII.[13] Interpretations of Title VII need not control where state law dictates a contrary result.

We find ample authority under Michigan's own civil rights legislation to support a conclusion that civil service violated state law in denying disability benefits to pregnant women.

Initially, it must be noted that, at least since 1972, the Michigan CRC has had interpretative guidelines bearing on this point:

"Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. Written and unwritten employment policies and practices involving matters such as the commencement and duration of leave, the availability of extensions, the accrual of

---

[12] 270 NW2d 829 (Iowa, 1978).

[13] By its own terms, Title VII does not preempt state law, 42 USC 2000e-7. See also 42 USC 2000h-4.

seniority and other benefits and privileges, reinstatement, and payment under any health or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities." Employment Guidelines and Interpretations of the MCRC, § 3950.10(b).

FEPA made it an unlawful employment practice "because of the sex of any individual, to * * * discriminate against him with respect to hire, tenure, terms, conditions or privileges of employment".[14] This provision was substantially carried over to the CRA.[15] Public Act No. 153 of 1978, an amendment to the CRA, defined "sex" as including, "but * * * not limited to, pregnancy, childbirth, or a medical condition related to pregnancy or childbirth that does not include nontherapeutic abortion not intended to save the life of the mother".[16]

Accordingly, we conclude that civil service's denial of pregnancy related disability benefits violated the anti-discrimination provisions contained in FEPA and its successor, the CRA. Pregnancy exclusion is not a sex neutral classification; pregnancy is a condition unique to women; therefore, any distinctions drawn on the basis of this feature works to deny women valuable rights solely on account of their sex. We conclude that "pregnancy" discrimination is included within the meaning of "sex" contained in the CRA and FEPA.

The Department of Civil Rights next argues that

[14] MCL 423.303a; MSA 17.458(3a), added by 1965 PA 344, as amended by 1966 PA 349 and 1972 PA 267.

[15] MCL 37.2202(1)(a); MSA 3.548(202)(1)(a), effective March 31, 1977.

[16] MCL 37.2201(d); MSA 3.548(201)(d).

the civil service's denial of pregnancy related long-term disability benefits constituted a pattern and practice justifying an award of relief to all persons similarly situated. Because the circuit court found no constitutional or statutory violations in the administration of the disability exclusion contained in civil service's long-term disability plan, no consideration was given to this pattern and practice claim. Accordingly, since we have reversed the decision of the circuit court, we remand for a *de novo* determination of whether pattern and practice relief should be awarded to those persons similarly situated with the claimants in this case.[17]

The Department of Civil Rights's last argument is that civil service's denial of pregnancy related long-term disability benefits violates the equal protection clause contained in article I, § 2 of the Michigan Constitution of 1963. However, because of our determination on issue two, we do not address this issue.

Reversed and remanded for proceedings consistent with this opinion.

D. F. WALSH, J., concurred.

M. J. KELLY, P.J. *(concurring).* I concur in the result reached by the majority. However, I write separately to suggest an alternative legislative analysis requiring the inclusion of pregnancy and related disabilities in the statutory prohibition of sex-based discrimination prior to 1978.

Comparing the Michigan Fair Employment Practices Act, MCL 423.301 *et seq.;* MSA 17.458(1) *et seq.,* and succeeding Michigan Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* with

---

[17] See, *Mayor of City of Dearborn v Dearborn Retirement Board of Trustees,* 315 Mich 18; 23 NW2d 186 (1946).

its Federal fair employment counterpart, 42 USC 2000e *et seq.,* discloses a similar legislative development. At the time of the complaints for benefits underlying this appeal, the language of the respective state and Federal statutes was similar in detail. The Michigan Act provided:

"It is an unfair employment practice:
"(a) For any employer, because * * * of the sex of any individual, to refuse to hire or otherwise to discriminate against him with respect to hire, tenure, terms, conditions or privileges of employment." MCL 423.303a; MSA 17.458(3a).

The equivalent provision in the Federal Civil Rights Act, 42 USC 2000e-2(a), was only slightly more detailed:

"It shall be an unlawful employment practice for an employer—
"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin: or
"(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

In two cases decided after these disabilities were incurred, the United States Supreme Court found the exclusion from coverage of pregnancy and pregnancy related disabilities not to constitute discrimination violative of the Federal prohibition. *General Electric Co v Gilbert,* 429 US 125; 97 S Ct

401; 50 L Ed 2d 343 (1976), *Nashville Gas Co v Satty,* 434 US 136; 98 S Ct 347; 54 L Ed 2d 356 (1977). In so holding, the Supreme Court in *Gilbert* specifically rejected the pregnancy-inclusive interpretation of an Equal Employment Opportunity Commission guideline, 29 CFR § 1604.10(b), adopted by the Civil Rights Commission as an interpretive guideline and argued by the Department of Civil Rights herein as controlling.

Subsequent to the clang of those cases, both Congress and our Legislature enacted amendments specifically including pregnancy and related conditions in the definition of sex. MCL 37.2201(d); MSA 3.548(201)(d), 42 USC 2000e(k). In its discussion of the Federal amendment, a report of the House of Representatives, HR Report No. 95-948, [1978] US Code Cong & Admin News 4750, disparaged upon the *Gilbert* and *Nashville Gas Co* decisions:

"H.R. 6075 will amend Title VII to clarify Congress' intent to include discrimination based on pregnancy, childbirth or related medical conditions in the prohibition against sex discrimination in employment.

"The Equal Employment Opportunity Commission, charged with implementation of Title VII, interpreted the act to include discrimination based on pregnancy. * * * *It is the Committee's view that these guidelines rightly implemented the Title VII prohibition of sex discrimination in the 1964 act.*

"Eighteen Federal district courts and all seven Federal courts of appeals which have considered the issue have rendered decisions prohibiting discrimination in employment based on pregnancy, in accord with the Federal guidelines.

"Contrary to these rulings and guidelines, the Supreme Court, in *General Electric Co v Gilbert,* 429 US 125 (1976), decided in favor of General Electric's disability insurance plan, which excluded coverage for women with pregnancy-related disabilities. The Court concluded that this exclusion in the company's benefits

policy was not gender-related but condition-related. It went on to indicate that because the plan did not exclude any disability that could be incurred by both men and women, it was not discriminatory.

"Justice Brennan, in a dissenting opinion, supported the EEOC guidelines as a reasonable interpretation and implementation of the broad social objectives of Title VII. He pointed out that since the plan included comprehensive coverage for males, and failed to provide comprehensive coverage for females, the majority erred in finding that the exclusion of pregnancy disability coverage was a nondiscriminatory policy. Furthermore, Justice Stevens, in his dissenting opinion, argued that 'it is the capacity to become pregnant which primarily differentiates the female from the male.'

"*It is the committee's view that the dissenting Justices correctly interpreted the Act.*" (Emphasis added, footnote omitted.)

As the majority notes Title VII does not preempt state law and we are not required by the main Supreme Court decisions to exclude pregnancy, 42 USC 2000e-7. See also 42 USC 2000h-4. Additionally, to the extent that the Michigan statute resembles the Federal act, both presently and at the time of the claims, congressional criticism of the Supreme Court while endorsing EEOC guidelines appears probative of the intent underlying our own statute. Since passage of the Federal Civil Rights Act, our Legislature has been but one step behind Congress in implementing statutory revisions of the fair employment laws. It is reasonable to conclude, therefore, that Congress's intent to include pregnancy and pregnancy related disabilities in the prohibition of sex-based discrimination prior to its 1978 amendments found a counterpart in the Michigan legislative intent enacting the Michigan provision.