Kathleen W. EBERTS, Genevieve Bialob-
locki, Thelma Bryant, Tanya Fourshee,
Della Hageman, Judith Jenkins, Joseph-
ine Kandefer, Dolores Kostelny, Stella
Lazarczyk, Barbara Leverett, Ollie Lit-
tle, Donna Loudermill, Mary Miller, Ma-
bel Morrell, Connie O'Neal, D. M. Os-
borne, Theresa Ratka, Adelaine Reece,
Elizabeth Ross, Margaret Service, Nao-
mi Williams and Joyce Young, on behalf
of themselves and on behalf of all per-
sons similarly situated and International
Union of Electrical, Radio and Machine
Workers, AFL–CIO–CLC, an unincorpo-
rated association, International Union
of Electrical, Radio and Machine Work-
ers AFL–CIO–CLC, Local 410, an unin-
corporated association, and Internation-
al Union of Electrical Radio and Ma-
chine Workers, AFL–CIO–CLC Local
1581, an unincorporated association,

v.

WESTINGHOUSE ELECTRIC CORPO-
RATION, a corporation and White-
Westinghouse Corporation.

Appeal of Kathleen EBERTS, Internation-
al Union of Electrical, Radio and Ma-
chine Workers, AFL–CIO–CLC, Tanya
Fourshee, Josephine Kandefer, Dolores
Kostelny, Stella Lazarczyk, Ollie Little,
Della Hageman, Mabel Morrell, Connie
O'Neal, Thelma Bryant, D. M. Osborne,
Elizabeth Ross, Margaret Service, Don-
na Loudermill, Barbara Levenett, Judith
Jenkins and Naomi Williams.

No. 77–2516.

United States Court of Appeals,
Third Circuit.

Argued June 7, 1978.

Decided July 18, 1978.

Louis B. Kushner, Rothman, Gordon,
Foreman & Groudine, Pittsburgh, Pa., Winn
Newman, Judy Bonderman, Washington, D.
C., Michael B. Trister, Richard B. Sobol,

Bruce S. Gelber, Sobol & Trister, Washington, D. C., Frank Petramalo, Jr., Bredhoff, Gottesman, Cohen & Weinberg, Washington, D. C., for appellants.

Walter P. DeForest, Peter D. Post, Patrick W. Ritchey, Walter G. Bleil, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant-appellee, Westinghouse Electric Corp.

Before ADAMS, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

Because of the rapidly evolving nature of the field, litigation directed at alleged employment discrimination based on sex continues to generate perplexing legal questions. The present appeal is founded on an effort by appellants to establish that *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), does not preclude them from stating a claim based on discrimination against female employees of the Westinghouse Electric Corporation. The district court concluded that in light of *Gilbert,* plaintiffs' action must be dismissed. Because we believe that *Gilbert,* particularly as construed by subsequent Supreme Court cases, is not a bar to six of the plaintiffs' seven claims as stated in their complaint, we reverse in part and remand.

### I.

Twenty-two current and former female employees of Westinghouse, who are also members of the International Union of Electrical, Radio and Machine Workers, AFL–CIO (IUE) and two local affiliates of IUE, brought this action on behalf of a nation-wide class of Westinghouse's female employees. The complaint contains seven counts, and in each it is alleged that Westinghouse has violated Title VII.

The first count challenges Westinghouse's policy of providing weekly sickness and accident benefit payments for up to twenty-six weeks to employees who must be absent from work because of non-occupational disabilities, except disabilities relating to pregnancy or childbirth. Examples of non-occupational disabilities said to be covered by the company's plan include those arising from elective hernia operations, fights, venereal disease, drug abuse, alcoholism and accidents caused by drunken driving. In addition to providing sickness and accident benefits for such non-occupational disabilities, the complaint charges, defendant also extends to its employees life insurance benefits during the period when weekly sickness and accident benefits are paid.

In the second and third counts, plaintiffs question Westinghouse's practice of denying female employees "credited service" and seniority for periods during which they were absent from work, prior to June 16, 1973, because of non-occupational disabilities arising from pregnancy or childbirth. It is asserted that seniority and credited service were provided to employees away from work because of all other non-occupational disabilities.

Count four attacks the requirement, imposed on female employees, that written notice of the condition of pregnancy be given during the first five months of pregnancy as a precondition for a leave of absence. No such notice is demanded of employees seeking leaves of absence for other non-occupational disabilities, plaintiffs maintain. Moreover, they complain that Westinghouse wrongfully discharged or threatened to discharge female employees who failed to give the necessary written notice of pregnancy.

An insistence that employees have nine months of continuous employment with Westinghouse before being allowed a leave of absence from work because of non-occupational disabilities relating to pregnancy is the subject of count five. No such condition, it is said, is imposed on the grant of leaves for other non-occupational disabilities. Further, plaintiffs aver that pregnant employees failing to meet the condition have been wrongfully discharged.

Count six consists of a challenge to Westinghouse's practice of forcing female employees to take unpaid maternity leave even

though they are willing and physically able to continue working, while not requiring other employees to take unpaid leaves prior to incurring nonpregnancy-related, non-occupational disabilities.

The seventh and final count recites that the IUE and its affiliated locals had sought to eliminate employment discrimination against female employees by means of negotiations with Westinghouse about the provisions in the national collective bargaining agreement between the parties. It asserts that the union signed the agreement under protest "and with the understanding that it had already filed pending charges and would proceed to litigate in the courts" the provisions in the contract said to discriminate unlawfully against female employees, including some not encompassed by the first six counts of the complaint, such as requiring employees returning from pregnancy leave to have a physical examination before starting work and assigning such returning employees to less favorable jobs than those returning from other leaves.

Plaintiffs filed their complaint on February 2, 1974. Westinghouse served an answer and partial motion to dismiss the complaint on May 2, 1974, and served an amended motion on May 20, 1975. Neither of the defendant's motions was acted upon immediately. Then, on August 15, 1977, following the Supreme Court's decision in *Gilbert,* plaintiffs commenced the process of discovery and served a set of interrogatories on Westinghouse, seeking information relating to the operation of the company's health benefits plan. The defendant's response on September 15, 1977, consisted of remarks to the effect that the requests for information were onerous and irrelevant.

An order dismissing the complaint in its entirety was entered by the district court on September 28, 1977. The court referred to its opinion in *Lukus v. Westinghouse Electric Corp.,* No. 76–1409 (W.D.Pa., filed September 27, 1977), as support for its ruling in this case. No independent analysis of the present situation, however, was provided.

*Lukus* involved a challenge to the practice of denying weekly sickness and accident payments to female employees absent from work because of pregnancy-related disabilities. The district court determined that, in its consideration, the Supreme Court's ruling in *Gilbert* was "completely dispositive of the issues *sub judice,*" and that the complaint's allegations failed to state a claim upon which relief could be granted.

Plaintiffs now question the district court's reliance on the reasoning of *Lukus* and its interpretation of *Gilbert.* Thus, we have before us issues of law pertaining to the correctness of the district court's view that *Gilbert* forecloses all of plaintiffs' claims.

## II.

■ Before considering the substantive standards for assessing plaintiffs' complaint under Title VII, it is well to keep in mind the procedural status of this appeal. The appeal has been taken from a dismissal of the complaint in its entirety for failing to state a claim as to which relief may be granted. It is established that, in determining whether to grant a motion to dismiss, a complaint must be construed in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). In the often-quoted words of *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The basic inquiry, then, is whether the counts in plaintiffs' complaint set forth a foundation for a legally cognizable claim of employment discrimination under Title VII, given the strictures established by *Gilbert.*

We deal first with counts two through seven, which do not involve the operation of a disability benefits plan, as did *Gilbert,* but instead concern other subjects

such as the employer's seniority policies and various requirements relating to leaves of absence. The crux of plaintiffs' argument as to these counts is that the district court either misread them or misapplied *Gilbert* to them, for they contend that *Gilbert* should be limited to the situation of a challenge to a disability benefits plan. Plaintiffs also point out that in *Lukus, supra,* which the district court cited as an expression of the reasoning underlying its judgment, the complaint consisted of a single count directed at Westinghouse's denial of disability benefits. In contrast, plaintiffs note, the present action raises a number of different issues in several distinct counts. Hence, it is argued that the district court cannot find the necessary support for the result it reached in this case simply by referring to *Gilbert* and *Lukus.*

The argument that the issues raised in counts two through seven are not controlled by *Gilbert* is a persuasive one. In *Gilbert,* the Supreme Court indicated that its equal protection analysis in *Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), which referred to a disability plan "strikingly similar" to the one in *Gilbert,* was a useful point of departure for analyzing Title VII claims based on alleged sex discrimination in employment. *See* 429 U.S. at 133, 97 S.Ct. 401. The Supreme Court observed that the questioned disability plan in *Geduldig,* "divides potential recipients into two groups—pregnant women and nonpregnant persons," and that while the former group was "exclusively female, the second includes members of both sexes." 429 U.S. at 135, 97 S.Ct. at 407, *quoting* 417 U.S. at 496–97 n.20, 94 S.Ct. 2485. Consequently, the plan was said not to constitute a *per se* discrimination on the basis of sex.

In *Geduldig* and again in *Gilbert,* the Court stressed that the finding that there is no *per se* violation of Title VII does not end analysis "should it be shown 'that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other.'" 429 U.S. at 135, 97 S.Ct. at 407. There was said to be no such demonstration in *Geduldig.* And in *Gilbert,* which had proceeded to trial, the Supreme Court indicated that "(t)here is no more showing . . . than there was in *Geduldig* that the exclusion of pregnancy benefits is a mere '(pretext) designed to effect an invidious discrimination against the members of one sex or the other.'" *Id.* at 136, 97 S.Ct. at 408.

Further, *Gilbert* reaffirmed the principle that a *prima facie* violation of Title VII may be established upon proof "that the effect of an otherwise facially neutral plan or classification is to discriminate against members of one class or another." *Id.* at 137, 97 S.Ct. at 408. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 431–32, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). No such substantiation was said to have been set forth in *Gilbert.* Crucial to the Court's analysis was what it described as the "indisputable baseline" that, as in *Geduldig,* " '(t)he fiscal and actuarial benefits of the program . . . accrue to members of both sexes,'" *id.,* 429 U.S. at 138, 97 S.Ct. at 409, *quoting* 417 U.S. at 497 n.20, 94 S.Ct. 2485. Moreover, there was no proof that the insurance package was actually "worth more to men than to women." 429 U.S. at 138, 97 S.Ct. at 409. The fact that an insurance plan is "less than all-inclusive" was described as an inadequate justification for finding gender-based discrimination. *Id.* at 138–39, 97 S.Ct. 401.

*Gilbert's* analysis is thus tied explicitly to the situation of a disability insurance arrangement. Not only is *Geduldig,* on which *Gilbert* relies, concerned with such a plan, but the Court's discussion in *Gilbert* of the effects of the plan is linked closely with its actuarial basis. It appears therefore that *Gilbert* should be seen primarily as bearing on a claim relating to an employer's insurance program, and not as prejudging other issues relating to employment security.

The Supreme Court in *Nashville Gas Co. v. Satty,* 434 U.S. 136, 98 S.Ct. 347, 54

L.Ed.2d 356 (1977), made it clear that *Gilbert* ought not to be read broadly as a bar to Title VII claims in situations and on subjects other than those arising in *Gilbert.* *Satty* held, *inter alia,* that the employer's policy of denying employees returning to work after pregnancy their accumulated seniority tends to deprive the employees "of employment opportunities" and to "adversely affect (their) status as an employee" in violation of § 703(a)(2) of Title VII, 42 U.S.C. § 2000e–2(a)(2).[1] The reasoning of *Satty* took for granted that, on its face, the seniority program under attack seemed to be neutral. The employer's policy distinguished between employees forced to take a leave of absence from work because of a disease or disability not including pregnancy, who retained accumulated seniority and continued to accrue it while on leave, and employees who took a leave of absence for any other reason, including pregnancy, and whose accumulated seniority was divested. "Petitioner's decision not to treat pregnancy as a disease or disability for purposes of seniority retention is not on its face a discriminatory policy." 434 U.S. at 140, 98 S.Ct. at 350. *See also Gilbert, supra,* 429 U.S. at 136, 97 S.Ct. 401. However, the Court again underscored, "(w)e have recognized . . . that both intentional discrimination and policies neutral on their face but having a discriminatory effect may run afoul" of Title VII. 434 U.S. at 141, 98 S.Ct. at 350.

In *Satty,* the Court wrote that it was "beyond question" that the employer's policy of "depriving employees returning from pregnancy leave of their accumulated seniority acts both to deprive them 'of employment opportunities' and to 'adversely affect (their) status as an employee.'" *Gil-*

bert was distinguished by the Court in *Satty* in the following terms:

> In *Gilbert, supra,* there was no showing that General Electric's policy of compensating for all nonjob-related disabilities except pregnancy favored men over women. No evidence was produced to suggest that men received more benefits from General Electric's disability fund than did women; both men and women were subject generally to the disabilities covered and presumably drew similar amounts from the insurance fund. We therefore upheld the plan under Title VII. . .

> Here, by comparison, petitioner has not merely refused to extend to women a benefit that men cannot and do not receive, but has imposed on women a substantial burden that men need not suffer. The distinction between benefits and burdens is more than one of semantics. (434 U.S. at 141–142, 98 S.Ct. at 351)

*Satty* thus recognized that the *ratio decidendi* of *Gilbert* may not properly be stretched to fit circumstances not contemplated in it. *See also City of Los Angeles v. Manhart,* 435 U.S. 702, 712–719, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978).

■ Moreover, it is noteworthy that counts two through seven of the complaint here do concern conditions alleged to impose substantial burdens on women "that men need not suffer." They thereby appear to fall within the terms of the distinction *Satty* established between it and *Gilbert. Cf. Jacobs v. Martin Sweets Co.,* 550 F.2d 364, 370–71 & 370 n.12 (6th Cir.), *cert. denied* 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977). Accordingly, in view of the analyses in *Gilbert* and *Satty* —especially when they are considered together—we have concluded that the district court erred

---

1. Also, *Satty* involved a challenge to the employer's policy of not awarding sick-leave pay to pregnant employees required to take leaves of absence. The Court held that that was not a *per se* violation of Title VII, and noted that such a conclusion does not end analysis if it can be demonstrated that the policy is a "pre-

text" aimed at effecting an invidious discrimination against the members "of one sex or the other." Since there was no such finding in the case, the Court remanded for a determination whether respondent preserved the right to proceed further on that theory.

in summarily dismissing counts two through seven.

There remains for consideration the first count, which deals with a disability insurance arrangement alleged to discriminate unlawfully against pregnant women. The first count avers that plaintiffs are the objects of discrimination because the employer pays its male employees non-occupational weekly sickness and accident benefits for absences up to a maximum of twenty-six weeks arising from a wide variety of non-occupational sicknesses and accidents, while any female employee who does not come to work because of pregnancy or childbirth is excluded from benefits. *Gilbert* also involved such a contention, and thus it would appear to be controlling.

Appellants maintain, however, that it was improper for the district court to dismiss the first count when there was a possibility of their proving discriminatory effects or a discriminatory purpose associated with the employer's policy regarding disability insurance. Reference is made to language in *Satty* that " . . . the facial neutrality of an employee benefit plan would not end analysis if it could be shown 'that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other . . .' " 434 U.S. at 145, 98 S.Ct. at 353. *Satty* additionally observed that *Gilbert* was predicated partly "on the ground 'that . . . there [was no] evidence which would support a finding, that the financial benefits of the Plan "worked to discriminate against any definable group or class in terms of . . . aggregate risk protection." ' " *Id.* at 144, 98 S.Ct. at 352. Hence, in light of *Satty,* appellants argue that it is impossible to say, simply on the pleadings, that beyond doubt

there is no basis on which plaintiffs would be entitled to relief on count one. *Cf. Conley v. Gibson, supra,* 355 U.S. at 45–46, 78 S.Ct. 99.

Yet given Count I as it is written, we may not properly conclude that the district court committed reversible error by dismissing it on the basis of *Gilbert. Cf. Wetzel v. Liberty Mutual Insurance Co.,* 558 F.2d 1028 (3d Cir. 1977) (per curiam), *cert. denied,* 434 U.S. 1010, 98 S.Ct. 721, 54 L.Ed.2d 753 (1978); *EEOC v. Children's Hospital of Pittsburgh,* 556 F.2d 222, 223 (3d Cir. 1977). The specific allegations in Count I simply do not bring that count outside the restrictions set forth in *Gilbert. See also Women in City Government United v. City of New York,* 563 F.2d 537, 540–41 (2d Cir. 1977). For that reason, we must affirm the district court as to its determination regarding the first count.[2]

In sum, we hold that the dismissal of counts two through seven of the complaint was error. The judgment of the district court thus will be affirmed as to Count I and reversed at to Counts II through VII, and the case remanded for further proceedings consistent with this opinion.

---

2. The result we have reached with respect to Count I is without prejudice to the plaintiffs to seek to amend their pleadings in the district court with respect to that count, and thus to bring the allegations in it within the reach of the principles enunciated in *Satty. Cf. Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). We express no view on whether any such motion to amend should be granted by the district court, as it is a determination for that court in the first instance.