**Diane LANGLEY, Plaintiff-Appellant,**

v.

**STATE FARM FIRE & CASUALTY COMPANY, a corporation, Defendant-Appellee.**

No. 80–7182.

United States Court of Appeals, Fifth Circuit. Unit B

May 14, 1981.

Judith S. Crittenden and Edward Still, Birmingham, Ala., for plaintiff-appellant.

Rives, Peterson, Pettus, Conway, Elliott & Small, Thomas A. Woodall, Clarence M. Small, Jr., Birmingham, Ala., for defendant-appellee.

Before TJOFLAT, HATCHETT and THOMAS A. CLARK, Circuit Judges.

HATCHETT, Circuit Judge:

Diane Langley appeals a decision of the trial court holding .that State Farm Fire and Casualty Company's maternity leave policy does not discriminate against women. We affirm.

## FACTS

State Farm employed Langley as a clerical employee from April 10, 1972, until January 2, 1975. In the spring of 1974, Langley discovered that she was pregnant. State Farm's personnel policies in effect in 1974 required pregnant employees to report their pregnancies upon discovery. The policy also required a pregnant employee: (1) to obtain a written statement from her personal physician specifying the delivery date and the date on which maternity leave should begin; (2) to obtain and submit another written statement from her physician if the initial dates were changed; (3) to return to work within sixty days after the birth of the child but not before obtaining a release from her personal physician; and (4) to· submit to a physical examination by State Farm's medical director before employment rights were reinstated.

Upon learning that she was pregnant, Langley reported this fact to management and obtained the required written statement from her personal physician. The physician estimated that Langley would deliver her child on October 25, 1974. Consequently, he recommended that she begin maternity leave on August 26, 1974, eight weeks prior to the estimated date of delivery. After beginning her maternity leave on August 26, 1974, Langley delivered her child on October 25, 1974. Under State Farm's sixty-day rule, she was expected to return to work not later than December 24.

State Farm scheduled Langley's company physical for December 12. On that date, her physician had not released her. Because State Farm's medical director was on vacation from December 15 through 25, Langley's company physical was scheduled for December 26. Langley's physician certified that she was able to return to work on December 16, 1974. On December 26, 1974, Langley was unable to keep her appointment because of her child's illness. As a result, State Farm rescheduled her company physical for January 2, 1975. Again, Langley cancelled this appointment because of her child's illness. When cancelling this appointment, Langley sought to extend her pregnancy leave by utilizing accumulated sick or vacation leave. State Farm denied her request because of its policies prohibiting employees from using sick leave when not sick, and its policy prohibiting the extension of a non-paid leave status (maternity leave) by a paid leave status (sick and vacation). State Farm terminated Langley's employment after January 2, 1975, for failure to follow the sixty-day return rule.

## ISSUES

The issues to be decided on this appeal are: (1) whether State Farm's policy requiring pregnant employees to give immediate notice of their pregnancy violates sections 703(a)(1), (2) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), (2);[1] (2) whether State Farm's policy requiring pregnant employees to discontinue work on the date suggested by their personal physicians violates Title VII; (3) whether State Farm's policy requiring pregnant employees to return to work with-

---

1. 42 U.S.C. § 2000e–2(a)(1), (2) provides:

   (a) It shall be an unlawful employment practice for an employer—
   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

in sixty days after delivery or after the employee's physician certifies that she is capable of returning to work violates Title VII; and (4) whether State Farm's policy requiring pregnant employees to submit to a physical examination by a company physician prior to returning to work violates Title VII.

## DISCUSSION

The personnel policies under attack in this action were in effect before the amended definition of sex discrimination became effective on October 31, 1978. Consequently, we apply the definition of sex discrimination as it existed prior to the October 31, 1978, amendment. We note, however, that the old definition encompassed sex discrimination based on pregnancy. *Harper v. Thiokol Chemical Corp.*, 619 F.2d 489 (5th Cir. 1980); *Harriss v. Pan American World Airways, Inc.*, 637 F.2d 1297 (9th Cir. 1980).

■ To establish a Title VII violation for sex discrimination, a plaintiff must initially prove that the challenged personnel policy has a discriminatory effect on women. Such a showing requires that the plaintiff establish that her employer's maternity leave policy, although neutral on its face, imposes on female employees a substantial burden that men need not suffer. *Nashville Gas Co. v. Satty*, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977). In other words, a plaintiff must show that the employer's policy operates to "deprive [women] of employment opportunities" because of their role in the scheme of existence. *Satty*, at 142, 98 S.Ct. at 351. If this prima facie case is established, the burden shifts to the employer to justify the challenged practice. *Texas Department of Community Affairs v. Burdine*, —— U.S. ——, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). If the employer meets this burden, to recover Langley must then show that the employer could use alternative practices to accomplish the same purpose without discriminatory effects. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

## I

■ Langley contends that State Farm's policy requiring pregnant employees to report their pregnancies immediately upon discovery constitutes a restriction on her employment opportunities. She cites *Mitchell v. Board of Trustees of Pickens County School District A*, 599 F.2d 582 (4th Cir.), *cert. denied*, 444 U.S. 965, 100 S.Ct. 453, 62 L.Ed.2d 378 (1979), as support for this argument.

To this argument, the trial court in this case responded:

> This is simply not correct. While no specific amount of advance notice is required with regard to sick leave and medical leave, employees are expected to give as much notice as possible for either type leave. And since leave for elective purposes (i. e., vacation, leave of absence, medical leave for nonemergency elective surgery, etc.) is always subject to the approval of the employee's supervisor, the requirement of notice for maternity leave is, for all practical purposes, treated the same. The notice requirement associated with maternity leave is an inconsequential burden, if a burden at all, and is certainly not a substantial burden . . . .
>
> [Furthermore, the] requirement of notice . . . can work no significant hardship since the date supplied by an employee's doctor may be modified by that doctor so as to shorten or lengthen the period of work prior to delivery.

Langley urges that *Mitchell* warrants a different result. We consider Langley's reliance on *Mitchell* misplaced. In *Mitchell*, Pickens County School Board used the advance notice given by its pregnant employees to determine whether a teacher could commit to a full year of uninterrupted service in the following school year. If the Board determined that the teacher's pregnancy would render her unable to commit to a full year of uninterrupted service in the following year, her contract would not be renewed. The Board's non-renewal policy also applied to men who could not commit to a full year of uninterrupted service.

No requirement existed, however, that male teachers give advance notice of extended absences. Thus, the School Board was unable to determine in a current year whether a male teacher could commit to a full year of uninterrupted service in the following year. Consequently, pregnant teachers were denied contracts while men were not, even though both expected to take leaves of absence which extended into the following school year. Clearly, this policy imposed upon women a substantial burden that men need not suffer.

*Mitchell* is distinguishable from the instant case. Langley does not contend, nor have we found, any instance where State Farm used the advance notices submitted by pregnant employees to restrict employment opportunities of pregnant women. State Farm used the advanced notice policy only as a business planning device. We agree with the trial court. We therefore find that Langley failed to establish a prima facie case of sex discrimination on this contention.

## II

■ Langley also contends that State Farm's policy requiring pregnant employees to discontinue work on the date suggested by their personal physician discriminates on the basis of sex. She asserts that this policy constitutes a mandatory maternity leave policy for which there is no business necessity. State Farm, on the other hand, argues that its policy is distinguishable from a mandatory leave policy. It asserts that a mandatory leave policy is arbitrary, but its policy is very flexible. State Farm explains that its maternity leave policy does not suggest a beginning leave date and allows the employee to work as long as her physician permits.

2. Langley was unaware of State Farm's policy permitting a pregnant employee to modify the maternity leave date originally suggested by her physician, with her physician's consent. Langley argues that the maternity leave date policy as understood by her, prevented her from working up to her delivery date. Thus, she asserts that State Farm's policy operated to deprive her of employment opportunities.

In *deLaurier v. San Diego Unified School District*, 588 F.2d 674 (9th Cir. 1978), the Ninth Circuit held that a school board policy which required a pregnant teacher "to go on leave at the commencement of her ninth month of pregnancy states a prima facie case under Title VII." *deLaurier*, at 677. Its holding emphasized that mandatory maternity leave was a restriction on pregnant women's employment opportunities and imposed a discriminatory burden on them.

The policy at issue in this case is distinguishable from the leave policy in *deLaurier*. In *deLaurier*, the leave policy was arbitrary because it did not take into consideration the employee's physical ability to work up to the date of delivery. The policy, therefore, operated to restrict employment opportunities of women. State Farm's leave policy, however, is flexible and permits a pregnant employee to work up to her expected date of delivery, if her personal physician certifies that she is able to work.[2] Moreover, unlike the school district in *deLaurier*, State Farm did not mandate a beginning date for Langley's maternity leave. We find, as the trial court did, that Langley has failed to make a prima facie showing of discrimination under Title VII on this issue.

## III

Langley next contends that State Farm's policy requiring pregnant employees to return to work within sixty days after delivery or after the employee's physician certifies that she is capable of returning to work constitutes discrimination based upon pregnancy. Langley also argues that State Farm's sixty-day rule imposes a burden on pregnant women which men need not suffer because it precludes extension of the post-partum leave period by use of paid vacation and sick leave or unpaid medical leave.

Langley's argument is totally devoid of merit. At all material times, Langley knew that she and her doctor controlled the date on which she was required to take maternity leave. If she thought she was physically capable of working up to her estimated delivery date, surely she would have advised her physician to this effect upon the theory that he would recommend a later maternity leave date.

With regard to the return to work prong of Langley's argument, the trial court held that "business necessity certainly supports such a policy." The trial court implicitly found that Langley established a prima facie case of sex discrimination on this issue. We agree. When a pregnant employee can not return to work within 60 days, her employment opportunities are substantially restricted because she could be fired.

We find, however, as the trial court did, that "business necessity certainly supports such a policy." The sixty-day return rule encourages an employee who has fully recovered from pregnancy and childbirth to return to her job and assume her share of the workload. This policy is essential to the efficient operation of State Farm's business.

Moreover, and equally important, State Farm's return policy is flexible. An employee may return to work immediately after her physician certifies that she is able to work. If the personal physician does not so certify within sixty days after delivery, the employee is not required to return to work. Compliance with State Farm's maternity leave policy assures the employee that her former position and salary (or a comparable position) without a loss of seniority or other job benefits will be available.

The second prong of Langley's argument asserts that State Farm's policy precluding the extension of maternity leave by sick leave, medical leave, or vacation time, imposes a burden on women that men need not suffer. We disagree.

State Farm's personnel policy will not allow an employee, male or female, to take sick leave or medical leave while not ill. As the trial court stated, "[a]n employee who is not ill but who is on vacation or on a leave of absence or on military leave cannot extend that vacation, leave of absence, or military leave by taking sick leave or medical leave." State Farm's policy also prohibits an employee, male or female, from extending a non-paid leave by a paid leave. As the trial court stated: "Thus, the company policy prohibits an employee from ex-

tending a leave of absence or maternity leave (both non-pay) by taking a vacation leave (paid). This policy applies equally to males and females."

If Langley were allowed to extend her maternity leave by going to sick leave or medical leave status when she was not ill, she would obtain a greater employment benefit than afforded men. Similarly, if she were allowed to extend her maternity leave by vacation leave, she would obtain a greater economic benefit than afforded men. Compliance with Title VII does not require the award of such benefits. *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976).

## IV

Finally, Langley argues that State Farm's policy requiring female employees returning from maternity leave to undergo a company physical as well as have a release from her personal physician imposes a burden on women that men need not suffer. Langley's argument does not state a prima facie case of discrimination under Title VII.

This examination and a doctor's certificate are required for every employee returning from a leave of personal illness of any duration. A company physical is also required for every employee returning from a military leave of any duration, and a leave of absence in excess of twenty-nine days. The company may require such an examination with regard to sick leave, medical leave, or vacation leave, and such an examination is often required when the absence has been extended. Since similar examinations are required of male employees, no burden was placed upon Langley because of her sex or because of her role in the scheme of existence. Moreover, Langley has not shown that the requirement of the company physical was used to discourage her or other female employees from returning from maternity leave.

## CONCLUSION

We hold that State Farm's maternity leave policy does not discriminate against

pregnant women. Accordingly, the judgment appealed from is affirmed.

AFFIRMED.