**Darlene THOMPSON, et al., Plaintiffs,**

**v.**

**BOARD OF EDUCATION OF the ROMEO COMMUNITY SCHOOLS, et al., Defendants.**

**No. G75–557 C.A.**

United States District Court, W. D. Michigan, S. D.

Nov. 20, 1981.

Mary H. Job, Lansing, Mich., for plaintiffs.

Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for defendants; Robert M.

Vercruysse, Detroit, Mich., Cholette, Perkins & Buchanan, Bruce M. Bieneman, Grand Rapids, Mich., of counsel.

## OPINION

FOX, Senior District Judge.

This is a case wherein plaintiffs, individually and as representatives of a class, seek to challenge the policies and practices pertaining to pregnant teachers of certain named school districts and a class of school districts represented by those defendants. *See,* 71 F.R.D. 398 (W.D.Mich.1978) and Opinion and Order dated August 21, 1981. In this latter opinion, 519 F.Supp. 1373, the court responded in part to motions for summary judgment by both sides. The court at that time continued under advisement those portions of the motions directly addressing liability under Title VII and the Elliott-Larsen Civil Rights Act. Following plaintiffs' re-evaluation of factual statements in this matter and the resubmission of those statements to this court, those remaining issues will now be addressed.

Both sides have moved for summary judgment on the Title VII claims and the plaintiffs have moved for summary judgment on the claims based on the Elliott-Larsen Civil Rights Act. Federal Rule of Civil Procedure 56 requires a court to render judgment in favor of the moving party if the materials filed with the court indicate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ Summary judgment is particularly appropriate where the parties have agreed on the facts of the case. Wright and Miller, *Federal Practice and Procedure* § 2525. In the present case, many of the facts have been agreed to in the briefs discussing summary judgment. (See Appendix.) The party opposing the motion must do more than make allegations that there does exist a genuine issue for trial, *SEC v. Bonastia,* 614 F.2d 908 (3rd Cir. 1980), or assert legal conclusions. *Willetts v. Ford Motor Company,* 583 F.2d 852 (6th Cir. 1978).

Both sides to this controversy have outlined the policies of seven named defendant school districts. There is a dispute as to whether violations were alleged in the Three Rivers School District. For purposes of this action, all of these practices are alleged to share the common deficiency of resulting in sex discrimination in violation of Title VII and the Elliott-Larsen Act. Though specific policies may differ in detail, these policies may be categorized for the purpose of determining whether their underlying principles violate Title VII or the Elliott-Larsen Civil Rights Act. The categories are:

(1) Disparate treatment of individuals with pregnancy-related disabilities in the availability of sick leave, employer-paid fringe benefits, and seniority, tenure, retirement and salary increment credit for time on leave as compared to individuals on non-pregnancy disability leave;

(2) Required notice of pregnancy within a certain number of months, often as a prerequisite to receiving pregnancy leave;

(3) Required medical verification of a pregnant teacher's ability to perform her duties;

(4) Mandatory leave commencement dates at a specified month of pregnancy unrelated to individual ability to work;

(5) Length of service requirements for eligibility for pregnancy leaves; and

(6) Disparate treatment of women returning from pregnancy leave as compared to those returning from non-pregnancy disability leave in such matters as placement and date of reinstatement.

At this point of litigation, two of plaintiffs' grounds for relief are being considered by the court, Title VII of the Civil Rights Act of 1964 and the Elliott-Larsen Civil Rights Act, MCLA 37.2101 *et seq.* Both address the problem of discrimination in the employment field but do so independently of each other. *Michigan Department of Civil Rights ex rel. Jones v. Michigan Department of Civil Service,* 101 Mich. App. 295, 301 N.W.2d 12, 15–16 (1980), *leave to appeal denied,* No. 66368 (August 20,

1981); *Taylor Federation of Teachers v. Board of Education*, 76 Mich.App. 692, 693, 257 N.W.2d 664 (1977).

The Elliott-Larsen Civil Rights Act, enacted to replace the Fair Employment Practices Act, MCLA 423.301 et *seq.*, prohibits employers from discriminating against an individual with respect to any condition or term of employment on the basis of sex. Though the Elliott-Larsen Act has an effective date of March 31, 1977, it continued the prohibition against sex discrimination embodied in the FEPA. *See* MCLA 423.303a.

■ "Sex" is defined in the Act as including pregnancy or conditions related to pregnancy excluding certain nontherapeutic abortions. MCLA 37.2201(d). This definition was added to the Act in 1978 following the United States Supreme Court decisions in *General Electric v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), and *Nashville Gas Co. v. Satty*, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977), both discussed below. However, it has been held to be a clarification of existing law rather than a new interpretation. *Michigan Department of Civil Rights v. Michigan Department of Civil Service*, 101 Mich.App. at 304, 301 N.W.2d at 16. This court also held that pregnancy-based discrimination violated the FEPA. *Id.* Therefore, any policy or action by defendants that distinguishes or discriminates on the basis of pregnancy violates state law.

The federal law prior to October 31, 1978 is not as clear cut. On that date, legislation was enacted and became effective that defined Title VII's proscription against discrimination "on the basis of sex" and "because of sex," 42 U.S.C. § 2000e–2, to include pregnancy and its related medical conditions for all employment purposes. 42 U.S.C. § 2000e(k). There is an exception to this proscription in the case of a "bona fide occupational qualification reasonably necessary to the normal operation" of the enterprise. 42 U.S.C. § 2000e–2(e).

■ Therefore, in evaluating employment practices subsequent to October 31, 1978, policies which create distinctions or discriminate on the basis of pregnancy are in violation absent a showing of a bona fide occupational qualification.

Prior to the 1978 amendments to Title VII, the United States Supreme Court had limited liability in such a situation to instances where the action of an employer imposed a burden on the employment opportunities of pregnant women. The Court in *Gilbert* held that an employer's disability insurance plan that excluded pregnancy-related disabilities did not violate Title VII of the Civil Rights Act of 1964. The Court found that the plan was a facially neutral insurance program that only excluded pregnancy-related disability benefits.

■■ The following year, the Supreme Court in *Satty* ruled that an employer's policy of denying sick leave benefits for disability due to pregnancy and childbirth did not violate Title VII as interpreted by *Gilbert.* However, an employer's "policy of depriving employees returning from pregnancy leave of their accumulated seniority acts both to deprive them 'of employment opportunities' and to 'adversely affect [their] status as an employee.' " 434 U.S. at 141, 98 S.Ct. at 350. The sick leave of *Satty* and the insurance exclusion of *Gilbert* were distinguished by Justice Rehnquist, who authored both opinions of the Court, since by eliminating accumulated seniority the employer had "not merely refused to extend to women a benefit that men cannot and do not receive, but [ha[d]] imposed on women a substantial burden that men need not suffer." 434 U.S. at 142, 98 S.Ct. at 351. It is true that Title VII does not require that pregnancy result in "greater economic benefits" being paid to some, but it does not allow "an employer to burden female employees in such a way as to deprive them of employment opportunities because of their different role ['in the scheme of human existence,' *Gilbert*, 429 U.S. at 139, n. 17, 97 S.Ct. at 410]." 434 U.S. at 142, 98 S.Ct. at 351. The Court found support for this holding in the 1972 EEOC guidelines which specified that " '[w]ritten and unwritten employment policies and practices involving ... the accrual of seniority ... and rein-

statement . . . shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities.' 29 CFR § 1604.10(b) (1976)." 434 U.S. at 142, n. 4, 98 S.Ct. at 351. An otherwise facially-neutral disability benefit plan which is challenged as being under-inclusive for excluding pregnancy can be overturned by Title VII only if it is used as a pretext for discrimination. 434 U.S. at 144, 98 S.Ct. at 352. When "[t]he direct effect of the exclusion is merely a loss of income for the period the employee is not at work[,] such an exclusion has no direct effect upon either employment opportunities or job status." 434 U.S. at 145, 98 S.Ct. at 353.

The liability determination, in accord with the above discussion, is divided into three parts: Elliott-Larsen, post-*Gilbert* amendment Title VII, and pre-*Gilbert* amendment Title VII.

■ It is the holding of this court that the Michigan Civil Rights Act prohibits distinctions in employment practices based on pregnancy or pregnancy-related conditions. Thus, the policies of the defendants violate that Act and the plaintiffs have made out a prima facie case against the defendants, and the plaintiffs are entitled to prevail as a matter of law.

■ Likewise, defendants' policies constitute disparate treatment on the basis of sex, in violation of Title VII subsequent to October 31, 1978. Plaintiffs have made out a prima facie case for those challenged policies of defendants which continued past that date.

■ A more detailed discussion is required, however, to fully understand the applicability of Title VII prior to the *Gilbert* amendments to the facts of this case. *Gilbert* and *Satty* hold that distinctions based on pregnancy do not necessarily mean discrimination on the basis of sex in violation of Title VII. Facially-neutral policies that merely withhold additional benefits to women who are pregnant are not prohibited. However, policies which burden the employment opportunities of women or which impact later on employment opportunities in a way that men do not need face are violative of the Act.

■ Under the ruling of *Satty*, the restriction on the availability of sick leave pay for pregnancy-related absences does not violate Title VII. Summary judgment must be granted in favor of defendants on this issue.

■ Plaintiffs also challenge the failure of the defendants to count their time on pregnancy leave in the same manner as time on disability leave for such purposes as seniority, tenure, retirement and salary increment increases. Clearly, the loss of such time in connection with seniority and tenure impacts on the future employment of the plaintiffs. The seniority and tenure rankings determine a teacher's continuing employment rights in relation to other employees, including male teachers who do not suffer this burden. A female teacher's ability to request and receive certain job assignments, promotions or transfers or to avoid future layoffs turns on her credited time. The effect of this denial of time follows a female employee throughout her career. *Harriss v. Pan American World Airways*, 649 F.2d 670, 678–79 (9th Cir. 1980); *Eberts v. Westinghouse Electric Corp.*, 581 F.2d 357, 358–362 (3rd Cir. 1978); *Greenspan v. Automobile Club of Michigan*, 495 F.Supp. 1021, 1049–54 (E.D.Mich.1980); *see, Vuyanich v. Republic National Bank*, 505 F.Supp. 224, 390 (N.D.Texas 1980). *Contra, In re Southwestern Bell Telephone Company Maternity Benefits Litigation*, 602 F.2d 845, 848–49 (8th Cir. 1979).

Similarly, salary increment credit and retirement credit for time on pregnancy leave impose a burden on pregnant women's future employment conditions.

At least one court has also found that withdrawing employer-paid-for benefits during pregnancy leaves violates Title VII for its imposition of a burden on women employees that men do not equally bear. *Greenspan*, 495 F.Supp. at 1051–54. It is the holding of this court also that such a practice cannot stand before the Civil Rights Act.

The requirement that women notify their school district of their pregnancy by some specified time of their pregnancy, often as a prerequisite for whatever pregnancy leave is offered to them, is obviously differential treatment from the policy covering non-pregnancy disabilities. The effects of non-compliance with this policy in its formulation as a prerequisite to the granting of a leave, with the termination of benefits or cessation of credits that would affect future employment privileges and rights long after the birth of the child and the teacher's return or attempted return to work, makes this policy violative of Title VII. See, *Langley v. State Farm Fire and Casualty* 644 F.2d 1124, 1128 (5th Cir. 1981) (such policies permitted if used for business planning purposes and not to foreclose job opportunities); cf., *Eberts v. Westinghouse Electric Corp.*, 581 F.2d 357, 358–362 (3rd Cir. 1978) (such a claim states a cause of action under Title VII).

In the same manner, requirements for periodic medical verifications of a pregnant teacher's ability to work, to the extent that they restrict the availability of leave provisions or impose other penalties that affect service credit, seniority or other employee items which carry a continuing impact on an employee's rights and classifications violate Title VII.

In the cases of both of the last two requirements, the decision of the court leaves open the door for some reasonable notice and verification requirements. (See discussion of business necessity below.)

The situation presented by mandatory leave commencement at some point of a teacher's pregnancy or of the school year, without consideration of an individual's continued ability to teach, states a clear case of Title VII discrimination. *Harriss v. Pan American World Airways*, 649 F.2d at 673–74; *deLaurier v. San Diego Unified School District*, 588 F.2d 674, 676–77 (9th Cir. 1978); *Vuyanich v. Republic National Bank*, 505 F.Supp. at 391–392; *Somers v. Aldine School District*, 464 F.Supp. 900 (S.D.Texas 1979); *Greenspan v. Automobile Club of Michigan*, 495 F.Supp. at 1051–54;

*Burwell v. Eastern Air Lines*, 633 F.2d 361, 365–369 (4th Cir. 1980). Such a policy burdens the employment opportunities at the time of a woman's pregnancy and the consequences of this lost working time could follow her throughout her career.

Plaintiffs have also challenged length-of-service requirements on eligibility for maternity leave. In their supplemental motion for partial summary judgment, plaintiffs alleged that the Harbor Beach Community Schools had such a policy from 1972 to 1976. Defendants, while not denying the existence of such a policy, denied that any probationary teacher was ever forced to resign due to her pregnancy. In plaintiffs' supplemental statement of uncontested facts, there is nothing regarding such a policy. Therefore, the court will render no judgment as to that issue at this time.

Finally, there are a variety of issues regarding alleged disparate treatment of teachers returning from pregnancy leave as opposed to the treatment of those individuals returning from other disability leaves. These include imposing special requirements as to the necessity and timing of informing the district regarding intent to return to work, placing teachers returning from pregnancy leave pursuant to policies of timing and position which differ from policies applicable to other disability leaves, and requiring teachers returning from pregnancy leave to return to work within a specified time. These policies also violate Title VII since they restrict plaintiffs' access to the workplace in a way that is more severe than restrictions placed on non-pregnancy disability leaves. In this manner, such policies burden the employment opportunities of the plaintiff class. Similarly, the Court of Appeals for the Eighth Circuit held that

denying female employees guaranteed reinstatement to positions held previous to leave of absence due to pregnancy while doing so for those returning from disability leave "impermissibly deprives female employees of employment opportunities."

*In re Southwestern Bell Telephone Company Maternity Litigation*, 602 F.2d at 849. *Accord, Greenspan v. Automobile Club of Michigan*, 495 F.Supp. at 1051–54. *See also, Vuyanich v. Republic National Bank*, 505 F.Supp. at 391–392 (different durational limits violate Title VII); *Harper v. Thiokol Chemical Corp.*, 619 F.2d 489, 492 (5th Cir. 1980). *Contra, ALPA v. Western Air Lines*, 23 FEP Cases 1042, 1046 (N.D.Calif.1979).

■ Since this court has determined that the district's facially neutral employment policies operate to deprive women of employment opportunities, the court must determine whether the district's "business" necessitates the adoption of particular leave policies. *Harper v. Thiokol Chemical Corp.*, 619 F.2d at 492, *citing Satty*, 434 U.S. at 143, 98 S.Ct. at 352, and *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). "The test is whether there exists an overriding legitimate purpose such that the practice is necessary to the safe and efficient operation of the business." *Robinson v. Lorillard*, 444 F.2d 791, 798 (4th Cir. 1971), *cited in Burwell v. Eastern Air Lines*, 633 F.2d at 371. The court in *Burwell* noted that, though concern for the safety of pregnant women and unborn children is commendable, it is not persuasive as argued by the defendants. 633 F.2d at 371.

The business necessity defense has been suggested only in connection with the mandatory pregnancy leave commencement policy and the requirement for periodic medical verification of a teacher's continuing ability to work. It is defendants' position that they may be able to show that the effective administration of the districts and the impaired conditions of teachers in the late stages of pregnancy require them to set such policies. This showing cannot be made in the case of mandatory leave dates which do not consider the continuing abilities of individual teachers to perform. This very point was made in a case cited by defendants which distinguished the policy of a required commencement date suggested by the teacher's physician from commencement dates which do not take into account the employee's ability to work up to

the delivery date. *Langley v. State Farm*, 644 F.2d at 1128. Further, although there is no doubt that administrative convenience would be served by pre-set mandatory leave dates, the business necessity for such a rule could not be shown since the district is often forced to deal with totally unexpected leaves due to non-pregnancy disabilities.

■ To the extent that the requirement for medical verification is not used to condition a teacher's right to maternity leave, this court has already held that it does not violate Title VII. To the extent that it does condition the granting of leave, it does violate Title VII and no legal justification for such a policy exists. Less severe sanctions certainly can be found.

■ Finally, the fact that the provisions being challenged are part of a collective bargaining agreement between each district and the local teacher bargaining unit, an association related to the organizational plaintiff in this action, the Michigan Education Association, does not prevent this opinion and order from being entered. This potential defense is alluded to in defendants' statement of facts accompanying their motion for summary judgment, but no argument is made of it. The rights protected by the Civil Rights Act of 1964 cannot be bargained away by an employer, a union or both. *EEOC v. United Air Lines*, 560 F.2d 224, 230 (7th Cir. 1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 764 (1978); *Patterson v. American Tobacco Co.*, 535 F.2d 257, 270 (4th Cir. 1976); *Robinson v. Lorillard Corp.*, 444 F.2d 791, 799 (4th Cir. 1971).

The damage and remedy portion of this matter appears to present some difficult questions. The court orders that the parties prepare for the court suggestions for effectively dealing with this phase of the litigation. The parties are urged to use this time to explore the possibility of stipulating to appropriate remedies.

The court urges the State Board of Education to more closely supervise the local boards in areas where unlawful discrimination might take place. The comments of

the drafters of Article VIII, Section 3 of the Michigan Constitution make clear that the State Board of Education is to serve as "the unifying and coordinating force for education within the state . . . ." It is the hope of this court that the Board will direct its attention to the problems of discrimination and will take steps to eradicate such a blight.

## APPENDIX

*Bellevue*

Prior to October 20, 1976, women on pregnancy leave were not entitled to sick pay or paid-for fringe benefits. Those individuals on disability leave were entitled to both of these benefits.

From October 1976 through October 1978, pregnancy-related disabilities were treated the same as other disabilities with the exception of paid-for fringe benefits.

*Harbor Beach*

Teachers on pregnancy leave were not entitled to sick pay though teachers on disability leave were so entitled.

Prior to September 1978, teachers were required to give notice of their pregnancy to the District by the third month of pregnancy.

Prior to September 1978, medical verification of a pregnant teacher's continuing ability to carry out her duties was required after the fifth month of pregnancy.

Teachers returning from a pregnancy disability leave who had given notice of their intent to return during the first week of the leave were reemployed. The District would place them in a vacancy or at the beginning of the semester, whichever occurred earlier. Disabled teachers were assigned to positions as soon as they were available.

*Livonia*

Prior to August 15, 1978, teachers on pregnancy leave were not entitled to paid-for fringe benefits, tenure accrual, retirement credit and advances on the salary increment schedule. Prior to August 15, 1975, such teachers were not entitled to

seniority accrual for time on leave. Teachers on disability leave were entitled to all of the above, plus sick pay.

Pregnant teachers were required to give notice to the District prior to their third month of pregnancy if they wished maternity leave.

Medical verification of continuing ability to work was required on request.

*Port Huron*

Teachers on pregnancy leave are not entitled to sick pay, paid-for fringe benefits or tenure or retirement credit. They are entitled to seniority accrual and advancement on the salary increment schedule only if they worked at least 90 days in a school year. Those on disability leave were entitled to sick pay, retirement credit, seniority accrual, tenure credit, advancement on the salary increment schedule and paid-for fringe benefits until accumulated sick days were exhausted.

Teachers desiring maternity leave must inform the District six months prior to the expected date of birth.

Medical verification of ability to perform duties is required.

Under the 1972–73 collective bargaining agreement pregnancy leave was to commence one month prior to the expected date of birth. Under the 1973–76 and 1976–78 agreements, such leave commenced on a date mutually agreeable to the teacher, her physician and the District.

In 1972–73, women seeking to return from a pregnancy leave were required to file a notice of request to return 60 days prior to desired return date. Return was contingent on a position being available. For those returning from disability leave, written requests were required and the District had the option of returning the teacher to the same position previously held or to another position.

Under the 1973–76 and 1976–78 agreements, teachers seeking to return from pregnancy leave who gave notice of their intent to return prior to taking the leave and returned within 60 days following giv-

ing birth would receive their former positions. Those that took an extended leave for up to one year would be placed in a comparable position at the beginning of the semester following the end of the leave. Those returning from disability leaves were required to file a request to return 60 days prior to the opening of school. Those returning from long-term disability leave could be placed in comparable positions.

*Romeo*

Prior to September 1978, teachers on pregnancy leave were not entitled to paid-for fringe benefits, retirement credit, sick pay or having time on leave credited for tenure. Those teachers on disability leave were entitled to paid-for fringe benefits (excluding long-term disability), sick pay (until accumulated sick days are exhausted), and retirement, seniority and tenure credit (until accumulated sick days are exhausted).

Under the 1972–74 agreement, pregnant teachers who wish to take a maternity leave were required to give notice to the District prior to the fifth month of pregnancy. Under the 1974–77 agreement, notice to the District was required as soon as possible.

The 1972–74 collective bargaining agreement provided that pregnancy leaves would commence on a date mutually agreeable to the teacher and to the District. Under the 1974–77 agreement, such a leave had to commence by the end of the eighth month of pregnancy.

Those who gave notice to the District 90 days prior to the beginning of the second semester or 120 days prior to the beginning of the first semester were reinstated into vacancies under the 1972–74 agreement. The 1974–77 agreement provides that such teachers would be reinstated at the commencement of the first marking period of the next school year. Teachers returning from disability leave were assigned to their same position or to an equivalent position as soon as possible.

Medical verification of a pregnant teacher's continuing ability to work was required; the 1977–79 agreement required monthly medical verification.

*Troy*

Notice of pregnancy was required by the fifth month.

Medical verification of a pregnant teacher's ability to continue work is required from the seventh month until the commencement of leave.

*Warren*

Prior to September 1978, teachers on pregnancy leave were not entitled to sick pay, paid-for fringe benefits, retirement credit, seniority credit, tenure credit or advancement on the salary increment schedule. Those on disability leave were entitled for one year.

Prior to 1978, pregnant teachers were required to give notice of their pregnancy by the fourth month.

Prior to 1978, pregnant teachers were required to provide continued medical verification of their ability to work.