Bertha J. HARPER, Plaintiff-Appellee,

v.

**THIOKOL CHEMICAL CORPORATION,**
**Defendant-Appellant.**

No. 78–2828.

United States Court of Appeals,
Fifth Circuit.

June 19, 1980.

Allen Butler, William L. Keller, Steven R. McCown, Dallas, Tex., for defendant-appellant.

Lovelace & Thompson, Charles E. Thompson, Atlanta, Tex., for plaintiff-appellee.

Francine K. Weiss, Atty., Lutz A. Prager, Equal Employment Opportunity Commission, Washington, D.C., amicus curiae.

Before AINSWORTH and GEE, Circuit Judges, and HUNTER,* District Judge.

AINSWORTH, Circuit Judge:

Bertha J. Harper filed this action seeking damages, reinstatement and reasonable attorney's fees against defendant-appellant Thiokol Chemical Corporation, alleging violations of section 703(a)(2) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a), as a result of her alleged unlawful termination of employment by defendant. After a nonjury trial the district court awarded judgment in favor of plaintiff Harper for damages in the amount of $21,081.52, costs, and attorney's fees in the amount of $5,000.

Plaintiff Harper was hired by defendant Thiokol on March 29, 1967, as a line worker at its production plant in Harrison County, Texas. The terms and conditions of her employment were at all times governed by a collective bargaining agreement between Thiokol and Caddo Lodge No. 1090, International Association of Machinists and Aerospace Workers.

On May 10, 1971, Harper requested and was granted a maternity leave of absence pursuant to article 16, section 3a of the collective bargaining agreement. In accordance with the terms of the agreement, the maternity leave was due to expire 90 days following delivery. The agreement also provided that a maternity leave could be extended for good cause shown upon written request made at least 15 days prior to the expiration of the leave.

On June 13, 1971, Harper's pregnancy was terminated through a miscarriage. After being released by her physician to return to work, on July 21, 1971, Harper called her employer and informed officials there that she was physically able and wished to return to work. She was told at this time that in accordance with Thiokol's unwritten medical policy she would have to have a normal menstrual cycle before returning to work. Harper again called Thiokol on August 12, 1971 and requested that she be allowed to return to work, but was again denied this opportunity because she had not had a normal menstrual cycle.

On September 13, 1971, Harper once again called Thiokol and spoke to Mr. J. L. Sawyer in the personnel department. She was told at this time that she could not return to work unless she had a doctor's statement and proof of a normal menstrual cycle. Immediately after this conversation Harper wrote her employer requesting an extension of maternity leave. This request was received in Thiokol's personnel office on September 14, 1971. On that day Harper reported to work and was told she could not return to her employment until she had sustained a normal menstrual cycle. Harper did not have a normal menstrual period

* District Judge of the Western District of Louisiana, sitting by designation.

until December 1, 1971. On September 22, 1971, Thiokol notified Harper of her termination effective September 13, 1971, the expiration of her maternity leave,[1] asserting that she failed to make a timely request for extension of maternity leave and failed to report for work upon the expiration of her leave.

After exhausting her administrative remedies Harper timely filed this suit. The district court concluded that Thiokol had engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, because it denied Harper the right to return to work upon her request and in accordance with medical advice prior to the expiration of her maternity leave. Furthermore, it denied her the right to return to work on September 14, 1971 after she had substantially complied with the terms of the collective bargaining agreement and it denied her the right to return to work prior to her having sustained a normal menstrual cycle in the absence of proof of any business necessity for such policy. The court also found that Thiokol's maternity leave policy was disproportionate to the medical leave provided for other nonjob-related illnesses or injuries and had no correlation with a justifiable medical or business necessity and thus was a proscribed employment practice.

Thiokol appeals from the court's judgment, alleging that its maternity leave provisions were not discriminatory and that Harper failed to comply with the terms of the collective bargaining agreement and thus its refusal to reemploy Harper was not improper. Alternatively, Thiokol contends the district court erred in its computation of damages.

### I. Sex-based Discrimination

The recent Supreme Court case of *Nashville Gas Co. v. Satty*, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977), is dispositive of the issue of sex-based discrimination in this

appeal. There the Court held that the employer's policy of denying accumulated seniority to female employees returning from pregnancy leave, although facially neutral in its treatment of male vis-à-vis female employees, did not merely refuse to extend to women a benefit that men could not and did not receive, but imposed on female employees a substantial burden that men need not suffer and thus in the absence of proof of any business necessity for it, constituted an unlawful employment practice. In distinguishing the case from *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), the Court pointed out that while greater economic benefits need not be paid to one sex or the other because of their different roles in the scheme of existence, *see Gilbert, supra*, 429 U.S. at 138–40, 97 S.Ct. at 409–10, an employer may not burden female employees in such a way as to deprive them of employment opportunities because of their role. *Satty, supra*, 434 U.S. at 142, 98 S.Ct. at 351. Thus, although in *Satty* the employer's decision not to treat pregnancy as a disease or disability for purposes of seniority retention was not on its face a discriminatory policy, "policies neutral on their face but having a discriminatory effect may run afoul of § 703(a)(2)." *Id.* at 141, 98 S.Ct. at 350. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971). Because the employer's policy of denying employees returning from pregnancy leave their accumulated seniority acted to deprive them of employment opportunities and adversely affected their status as employees, it unlawfully imposed upon women a substantial burden that male employees would never bear thereby discriminating against women because of their sex. *Satty, supra*, 434 U.S. at 141–42, 98 S.Ct. at 350–51.

In our view, Thiokol's policy of requiring women who have been on pregnancy leave to have sustained a normal menstrual cycle before they can return to work clearly deprives female employees of em-

---

1. The collective bargaining agreement provided for a 90-day maternity leave to begin running from date of *delivery*. Although plaintiff's pregnancy was terminated by a miscarriage, on June 13, 1971, Thiokol calculated Harper's 90-day leave from that date, so that the expiration of her maternity leave fell on September 13, 1971.

ployment opportunities and imposes on them a burden which male employees need not suffer. After Harper had a miscarriage on June 13, 1971, she attempted to return to work on three different occasions prior to the expiration of her 90-day maternity leave. Although her doctor had declared her physically able to return to work, she was denied reinstatement by Thiokol because she had no proof of having experienced a normal menstrual cycle. Because her menstrual period did not occur until December 1971, well after the expiration of her maternity leave, Harper was terminated and thereby effectively denied employment opportunities. Under the *Satty* rationale and its progeny, in the absence of any business justification, the policy constitutes an unlawful employment practice in violation of section 703(a)(2). *See In re Southwestern Bell Telephone Co. Maternity Benefits Litigation*, 602 F.2d 845, 849 (8th Cir. 1979) (policy of guaranteeing reinstatement to job position held prior to leave to employees returning from disability leave for nonoccupational illness other than pregnancy, while failing to guarantee reinstatement to female employees returning to work immediately after pregnancy-related disability constituted unlawful sex discrimination); *deLaurier v. San Diego Unified School District*, 588 F.2d 674, 684–85 (9th Cir. 1978) (rule which forbade use of accumulated sick leave benefits for maternity leave illegally discriminated against female teachers on basis of sex); *Pennington v. Lexington School District 2*, 578 F.2d 546, 548–49 (4th Cir. 1978) (reinstatement policy requiring physically fit female teachers to remain on leave for entire school year after pregnancy while allowing employees absent for other disabilities to return to work would constitute unlawful sex discrimination absent business justification for rule).

■ Once it is ascertained that an employer's facially neutral employment policy operates to deprive women of employment opportunities, the court must determine whether the company's business necessitates the adoption of particular leave policies. *Satty, supra*, 434 U.S. at 143, 98 S.Ct. at 352; *Griggs, supra*, 401 U.S. at 431, 91

S.Ct. at 853. However, where there is no proof of any business necessity adduced with respect to the policy in question, "[the] court [is] entitled to 'assume no justification exists.'" *Satty, supra*, 434 U.S. at 143, 98 S.Ct. at 352, *quoting Satty v. Nashville Gas Co.*, 384 F.Supp. 765, 771 (M.D.Tenn.1974). Here, Thiokol is unable or unwilling to articulate a business justification for its rule; rather it argues that because the menstrual cycle rule was facially neutral in that it did not favor one sex over the other, it was not required to justify its rule by proof of business necessity. This is plainly contrary to the Supreme Court's holding in *Satty*, and thus in the absence of any evidence of business necessity the district court properly assumed that no justification existed for the rule. Therefore, the district court's conclusion that Thiokol engaged in unlawful employment practices by denying appellee Harper the right to return to work prior to her having a normal menstrual cycle was correct, particularly in light of the fact that her doctor had declared her physically able to return to work well before she had experienced a normal cycle in December 1971.

■ Thiokol's policy is also unlawful under the recent "sex plus" decisions by this court and others. *See Jefferies v. Harris County Community Action Association*, 615 F.2d 1025, 1033–34 (5th Cir. 1980). Following the Supreme Court's decision in *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 544, 91 S.Ct. 496, 497–98, 27 L.Ed.2d 613 (1971), where it was held that section 703(a) of the Act cannot be read to permit an employer to adopt one policy for men and another for women and thereby deny persons of like qualifications equal employment opportunities because of their sex, courts have consistently held that company rules which single out certain subclasses of women for disparate treatment constitute unlawful sex discrimination. Thus employers can no longer escape violations of Title VII by adding nonsex factors in creating discriminatory policies. *Jefferies, supra*, 615 F.2d at 1034. *See In re Consolidated Pretrial Proceedings in Airline Cases*, 582 F.2d 1142, 1145 (7th Cir. 1978) (airline's

policy requiring female cabin attendants who become mothers to resign or accept ground duty position constituted sex discrimination); *Jacobs v. Martin Sweets Co.*, 550 F.2d 364, 369–71 (6th Cir. 1977) (transfer of unwed pregnant woman against her wishes to inferior position constituted constructive termination in violation of Title VII), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977); *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1198 (7th Cir.) (no marriage rule which applied only to female flight attendants was unlawful sex discrimination), *cert. denied*, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971); *Lansdale v. United Airlines, Inc.*, 437 F.2d 454, 455 (5th Cir. 1971) (no marriage rule for stewardesses reconsidered in light of *Phillips, supra*). Thus, under the rationale of these cases an employer may not lawfully single out postpartal women who have failed to sustain a normal menstrual cycle for discriminatory treatment.[2]

## II. Substantial Compliance with the Collective Bargaining Agreement

▆ Thiokol argues that the district court was without authority to determine whether Harper had substantially complied with the collective bargaining agreement since this is a claim to be evaluated by an arbitrator. Thiokol contends, and the district court agreed, that Harper had not made a timely request for an extension of maternity leave in accordance with article 16, section 4 of the agreement (Finding of Fact # 26). However, this finding is irrelevant to plaintiff-appellee's entitlement to relief.

Thiokol admits in its brief that the district court properly had jurisdiction under *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), to determine that its refusal to allow Harper to return to work because she had not met its medical requirement of sustaining a normal menstrual cycle was a discriminatory act (appellant's brief at 19). Appellant argues, however, that the district court did not address this issue. This argument is without merit. In its Conclusion of Law # 15 the district court held that "[t]he fact that Plaintiff was refused the right to return to work in accordance with her request and in accordance with medical advice prior to the expiration of her maternity leave constituted an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964, as amended." In its Conclusion of Law # 17, the court further held that the "[e]mployer's policy of denying female employees on pregnancy leave the right to return to work prior to their having a normal menstrual cycle is a denial of specific employment opportunities and in absence of proof of any business necessity for it, constitutes an unlawful employment practice." The court therefore clearly addressed the issue whether Thiokol's act in refusing reinstatement was discriminatory and concluded that it was. The district court's holding was correct. *See Satty, supra.*

## III. Damages

▆ Thiokol finally contends that the district court's award of damages to Harper is not supported by the record. The court's award consisted of the amount of back pay plaintiff would have earned from Thiokol if she had not been unlawfully terminated (as well as an amount for reasonable attorney's fees) as is allowed under the Act. 42 U.S.C. § 2000e–5(g). *See Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 251–56 (5th Cir. 1974). Appellant's principal contention is that the court's award should be reduced by a sum representing back wages for a period of ten months during which time Harper became pregnant again, and according to Thiokol would have been unable to work. It is important to note, how-

2. It is also noteworthy that Thiokol's maternity leave policy is in contravention of the regulations of the Equal Employment Opportunity Commission. The 1972 guidelines, as amended, specify that "[w]ritten or unwritten employment policies and practices involving matters such as . . . reinstatement . . . shall be applied to disability due to pregnancy, childbirth or related medical conditions on the same terms and conditions as they are applied to other disabilities." 29 C.F.R. § 1604.10(b) (1979).

ever, that Harper did not become pregnant the second time until at least six months after the date of her termination by Thiokol. After her termination she made serious efforts to obtain employment, but was unsuccessful in her endeavors.

In formulating relief in employment discrimination cases, the district court has broad discretion to fashion remedies as the equities of a particular case compel. *Le-Blanc v. Southern Bell Telephone & Telegraph Co.*, 460 F.2d 1228, 1229 (5th Cir. 1972), *cert. denied*, 409 U.S. 990, 93 S.Ct. 320, 34 L.Ed.2d 257 (1973). The Court of Appeals will not interfere with that discretion absent a showing of clear abuse. *Local 53 v. Vogler*, 407 F.2d 1047, 1052 (5th Cir. 1969). In this case, considering the circumstances, no such abuse has been shown.[3]

AFFIRMED.

---

**3.** The district court also found that Thiokol's maternity leave policy was disproportionate to the medical leave provided for other nonjob-related illnesses or injuries and was therefore unlawful. In view of our holding, we find it unnecessary to address the issue here and therefore express no opinion as to the correctness of the lower court's conclusion.