# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 30, 2013

Lyle W. Cayce
Clerk

No. 12-20220

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff - Appellant

v.

HOUSTON FUNDING II, LIMITED; HOUSTON FUNDING CORPORATION,

Defendants - Appellees

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before JOLLY, JONES, and GRAVES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The question we must answer in this appeal is whether discharging a female employee because she is lactating or expressing breast milk constitutes sex discrimination in violation of Title VII. We hold that it does.

The Equal Employment Opportunity Commission ("EEOC"), on behalf of Donnicia Venters ("Venters"), sued Houston Funding II, Ltd. and Houston Funding Corp. ("Houston Funding"), alleging Houston Funding unlawfully discharged Venters because she was lactating and wanted to express milk at work. The district court granted summary judgment in favor of Houston Funding, finding that, as a matter of law, discharging a female employee

No. 12-20220

because she is lactating or expressing milk does not constitute sex discrimination. We VACATE and REMAND.

## I.

Venters worked as an account representative/collector for Houston Funding from March 2006 until she was fired in February 2009. In December 2008, she took a leave of absence to have her baby. Houston Funding has no maternity leave policy,[1] and Venters and her supervisors did not specify a date for her return. Shortly after giving birth, Venters told Harry Cagle ("Cagle"), Houston Funding's Limited Partner, that she would return to work as soon as her doctor released her. Venters suffered complications from her C-section, however, and ended up staying home through mid February.

During her absence, Venters regularly contacted her supervisor, Robert Fleming ("Fleming"), as well as other Houston Funding managers. Venters' mobile phone records reflect that she spent 115 minutes on the phone with the Houston Funding office between January 7, 2009, and February 6, 2009.[2] USCA5 at 194-97. Fleming testified that Venters called him at least once a week from the beginning of her leave in December 2008 through his departure from the company in January 2009. During one conversation, Venters told Fleming that she was breastfeeding her child and asked him to ask Cagle whether it might be possible for her to use a breast pump at work. Fleming stated that when he posed this question to Cagle, Cagle "responded with a strong 'NO. Maybe she needs to stay home longer.'"

---

[1] Houston Funding is small enough not to be encompassed by the Family and Medical Leave Act.

[2] Additionally, Venters contends she occasionally used her home phone to call Houston Funding, and thus that the 115 minutes likely understates the total amount of time she spoke with employees at the Houston Funding office.

No. 12-20220

On February 17, 2009, Venters called Cagle and told him her doctor had released her to return to work. Again, she mentioned she was lactating and asked whether she could use a back room to pump milk. After asking this question, Venters testified that there was a long pause, and when Cagle finally responded, he told her that they had filled her spot. The record reflects no denial of this conversation. On February 20, Houston Funding mailed a termination letter dated February 16 to Venters. This letter stated Venters was discharged due to job abandonment, effective February 13.

Venters subsequently filed a charge of sex discrimination with the EEOC. Houston Funding responded to this charge by asserting Venters had not contacted her supervisor during her maternity leave and had not attempted to return to work. After investigating Venters' charge, the EEOC brought a Title VII action against Houston Funding in district court, asserting that Houston Funding unlawfully discriminated against Venters based upon her sex, including her pregnancy, childbirth, or related medical conditions, by ending her employment.

Houston Funding argued Title VII does not cover "breast pump discrimination" and moved for summary judgment. The district court granted the motion, finding that, even if Venters' allegations were true, "[f]iring someone because of lactation or breast-pumping is not sex discrimination," and that lactation is not a related medical condition of pregnancy. The EEOC timely appealed.

## II.

We review a grant of summary judgment *de novo*, applying the same standard as the district court. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 308 (5th Cir. 2004). Summary judgment is properly granted if, viewing the facts in the light most favorable to the nonmoving party, the movant shows that there

No. 12-20220

is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(c).

Title VII of the Civil Rights Act "prohibits various forms of employment discrimination, including discrimination on the basis of sex." *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 276-77 (1987). Almost immediately after the Supreme Court, in *General Electric Co. v. Gilbert*, 429 U.S. 125, 136-38 (1976), held that discrimination on the basis of pregnancy is not sex discrimination, Congress amended Title VII to include the Pregnancy Discrimination Act ("PDA"). 42 U.S.C. § 2000e-(k). The PDA provides that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions[.]" 42 U.S.C. § 2000e-(k). And the Supreme Court has recognized that this amendment "unambiguously expressed [Congress'] disapproval of both the holding and the reasoning of the Court in the *Gilbert* decision." *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 678 (1983).

As such, courts have since interpreted Title VII to cover a far wider range of employment decisions entailing female physiology. This Court, for example, found in *Harper v. Thiokol Chemical Corp.,* 619 F.2d 489 (5th Cir. 1980), that "Thiokol's policy of requiring women who have been on pregnancy leave to have sustained a normal menstrual cycle before they can return to work clearly deprives female employees of employment opportunities and imposes on them a burden which male employees need not suffer." 619 F.2d at 491-92. The court accordingly held Thiokol violated Title VII as amended by the PDA. *Id.* at 491-93.

In this case, the parties focus upon whether Houston Funding's conduct violated Title VII generally, as well as upon whether lactation is a related medical condition of pregnancy for purposes of the PDA. Given our precedent, we hold the EEOC's argument that Houston Funding discharged Venters

4

No. 12-20220

because she was lactating or expressing milk states a cognizable Title VII sex discrimination claim. *See, e.g.*, *Harper*, 619 F.2d 489. An adverse employment action motivated by these factors clearly imposes upon women a burden that male employees need not—indeed, could not—suffer. *Id.* at 491-92.

Moreover, we hold that lactation is a related medical condition of pregnancy for purposes of the PDA. Lactation is the physiological process of secreting milk from mammary glands and is directly caused by hormonal changes associated with pregnancy and childbirth. *See, e.g.*, Collins English Dictionary–Complete and Unabridged (HarperCollins Pub. 2003), *available at* http://www.thefreedictionary.com/lactation (defining lactation as "the secretion of milk from the mammary glands after parturition").[3] It is undisputed in this appeal that lactation is a physiological result of being pregnant and bearing a child.

The PDA does not define the statutory term "medical condition" ("pregnancy, childbirth, or related medical conditions"), but "[i]t is well-settled that 'we should give words of statutes their plain meaning.'" *United States v. Ferguson*, 369 F.3d 847, 851 (5th Cir. 2004) (quoting *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 502 (5th Cir. 2002)). In discerning words' plain meaning, we may consult the dictionary. *See id.* The McGraw-Hill Concise Dictionary of Modern Medicine defines "medical condition" as:

> A disease, illness, or injury MEDICAL PRACTICE Any condition—e.g., physiological, mental, or psychologic conditions or disorders—e.g., orthopedic, visual, speech, or hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, CA, CAD, DM, mental retardation, emotional or mental illness, specific learning disabilities, HIV disease, TB, drug addiction, alcoholism

---

[3] *See also* OXFORD ENGLISH DICTIONARY, OED ONLINE, http://www.oed.com/view/Entry/104916?redirectedFrom=lactation& (last visited April 16, 2013); National Institutes of Health, *Breast milk - pumping and storing*, MEDLINEPLUS, http://www.nlm.nih.gov/medlineplus/ency/article/002451.htm (last visited April 16, 2013).

No. 12-20220

JOSEPH SEGEN, MCGRAW-HILL CONCISE DICTIONARY OF MODERN MEDICINE 405 (2006). This definition is consistent with those of other medical dictionaries, which also broadly construe these terms.[4] Given that this definition includes any physiological condition, it is difficult to see how it could not encompass lactation.

Furthermore, our precedent follows this interpretation. For example, although this Court in *Harper* did not explicitly find menstruation was a related medical condition of pregnancy under the PDA, it did find

> noteworthy that Thiokol's maternity leave policy is in contravention of the regulations of the Equal Employment Opportunity Commission. The 1972 guidelines, as amended, specify that '(w)ritten or unwritten employment policies and practices involving matters such as . . . reinstatement . . . shall be applied to disability due to **pregnancy, childbirth or related medical conditions** on the same terms and conditions as they are applied to other disabilities.' 29 C.F.R. § 1604.10(b) (1979).

---

[4] Many medical dictionaries do not define the term "medical condition," but they often define the terms "condition" and "medical" individually. For instance, The American Heritage Medical Dictionary defines "condition" as "1. A disease or physical ailment; 2. A state of health or physical fitness." THE AMERICAN HERITAGE MEDICAL DICTIONARY (2007), *available at* http://medical-dictionary.thefreedictionary.com/condition. *See also* MOSBY'S MEDICAL DICTIONARY (8th ed. 2009), *available at* http://medical-dictionary.thefreedictionary.com/condition (defining "condition" as "a state of being, specifically in reference to physical and mental health or well-being"); MILLER-KEANE ENCYCLOPEDIA AND DICTIONARY OF MEDICINE, NURSING, AND ALLIED HEALTH (7th ed. 2003), *available at* http://medical-dictionary.thefreedictionary.com/condition (a "condition" is "the state in which an object or person exists"). These dictionaries generally provide "medical" is of or relating to the study or practice of medicine. *See, e.g.*, THE AMERICAN HERITAGE MEDICAL DICTIONARY (2007), *available at* http://medical-dictionary.thefreedictionary.com/medical. And they define "medicine" as, *inter alia*, "the art and science of the diagnosis and treatment of disease and the maintenance of health." MILLER-KEANE ENCYCLOPEDIA AND DICTIONARY OF MEDICINE, NURSING, AND ALLIED HEALTH (7th ed. 2003), *available at* http://medical-dictionary.thefreedictionary.com/medicine; *see also* MOSBY'S MEDICAL DICTIONARY (8th ed. 2009), *available at* http://medical-dictionary.thefreedictionary.com/medicine ("the art and science of the diagnosis, treatment, and prevention of disease and the maintenance of good health"). Thus, in determining whether a woman who has recently given birth is in good health, the question of whether she is lactating is certainly relevant, and likely something a doctor would consider in assessing her medical condition. Lactation is indisputably a condition related to pregnancy.

No. 12-20220

619 F.2d at 493 n.2 (alterations in original) (emphasis added). Accordingly, the Court did, at least implicitly, hold that menstruation was "pregnancy, childbirth or [a] related medical condition," given the facts of that case.[5]

Menstruation is a normal aspect of female physiology, which is interrupted during pregnancy, but resumes shortly after the pregnancy concludes. Similarly, lactation is a normal aspect of female physiology that is initiated by pregnancy and concludes sometime thereafter. If an employer commits unlawful sex-based discrimination by instituting a policy revolving around a woman's post-pregnancy menstrual cycle, as in *Harper*, it is difficult to see how an employer who makes an employment decision based upon whether a woman is lactating can avoid such unlawful sex discrimination.[6] And as both menstruation and

---

[5] Similarly, in a recent unpublished case, this Court did not explicitly reach the issue of whether lactation and the expressing of breast milk were covered under Title VII, but implied that they are. *Puente v. Ridge*, 324 F. App'x 423, 428 (5th Cir. 2009) (unpublished). In rendering its decision, the court relied upon the fact that the plaintiff failed to allege her employer "expressly prohibited her from expressing breast milk during her [allowed break time];" i.e., the court found the plaintiff failed to allege facts that, if true, would entitle her to relief. This case thus indicates that Title VII covers lactation and the expressing of breast milk—if the opposite were true, the Court could have simply said that employment decisions entailing a woman's lactation or expressing of breast milk do not violate Title VII, rather than focusing on the plaintiff's failure to properly articulate her claim.

[6] The cases the defendants cite in arguing that lactation is not a medical condition are distinguishable on several grounds. Notably, most of these cases involved claims that the employer did not appropriately accommodate a female employee who wanted to use a breast pump at work. *See Martinez v. N.B.C., Inc.*, 49 F. Supp. 2d 305, 308-10 (S.D.N.Y. 1999) (pregnancy and related medical conditions are not "disabilities" for purposes of the Americans with Disabilities Act, and the employer did not need to accommodate the plaintiff's desire to use a breast pump in the workplace); *Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 207 (5th Cir. 1998) (the PDA does not require special treatment based upon pregnancy); *Falk v. City of Glendale*, No. 12-cv-00925-JKL, 2012 WL 2390556, at *4 (D. Colo. June 25, 2012) (the PDA does not compel employers to affirmatively provide accommodations, and the plaintiff failed to allege differential treatment); *Vachon v. R.M. Davis, Inc.*, No. 03-234-P-H, 2004 WL 1146630, at *10 (D. Me. Apr. 13, 2004) (the plaintiff failed to allege an adverse employment action when she asserted only that her employer did not provide sufficient accommodations for breastfeeding); *Wallace v. Pyro Mining Co.*, 789 F. Supp. 867, 869 (W.D. Ky. 1990) (the PDA does not require an employer to grant additional leave to a woman wishing to stay home to breastfeed her child). The issue here is not whether Venters was entitled to special accommodations—at the time, she was not entitled to special accommodations under Title

No. 12-20220

lactation are aspects of female physiology that are affected by pregnancy, each seems readily to fit into a reasonable definition of "pregnancy, childbirth, or related medical conditions."

### III.

Because discriminating against a woman who is lactating or expressing breast milk violates Title VII and the PDA, we find that the EEOC has stated a *prima facie* case of sex discrimination with a showing that Houston Funding fired Venters because she was lactating and wanted to express milk at work.[7] The EEOC has further proffered evidence showing that Houston Funding's stated reason for discharging Venters—i.e., job abandonment—was pretextual. There is, therefore, triable evidence from which a factfinder may conclude that Houston Funding violated Title VII by discharging Ms. Venters. The EEOC has thus satisfied the requirements of the *McDonnell Douglas* inferential test for Title VII discrimination such that she may proceed to trial. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

For these reasons, we VACATE the judgment of the district court and REMAND for further proceedings not inconsistent with this opinion.

VACATED and REMANDED.

---

VII—but, rather, whether Houston Funding took an adverse employment action against her, namely, discharging her, because she was lactating and expressing breast milk.

[7] The record before us reflects that Venters asked Cagle whether she would be permitted to use a breast pump while at work. The record also shows that Cagle demonstrated hostility toward such an accommodation. In its motion for summary judgment, Houston Funding contended Venters was fired because she inquired about whether she would be allowed to use a breast pump. Simply posing this question is not alleged to be a terminable offense. But nothing in this opinion should be interpreted as precluding an employer's defense that it fired an employee because that employee demanded accommodations. Houston Funding, however, apparently contends Venters was discharged for job abandonment, so it is uncertain whether this issue will arise in this case, if and when it is tried.

No. 12-20220

EDITH H. JONES, Circuit Judge, concurring in the judgment:

I concur in the judgment in this case and would note two points. First, in footnote 6, the panel opinion refers to cases that are "distinguishable" because "most" involve "claims that the employer did not appropriately accommodate a female employee who wanted to use a breast pump at work." The panel opinion does not cast doubt on the holdings of those cases rejecting such claims. In *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204 (5th Cir. 1998), this court held that the PDA does not mandate special accommodations to women because of pregnancy or related conditions. It follows that if Venters intended to request special facilities or down time during work to pump or "express" breast milk, she would not have a claim under Title VII or the PDA as of the date of her lawsuit. Indeed, if providing a plaintiff with special accommodation to pump breast milk at work were required, one wonders whether a plaintiff could be denied bringing her baby to the office to breastfeed during the workday.

Second, footnote 5 misstates this court's unpublished ruling in *Puente v. Ridge*, 324 F.App'x. 423 (5th Coir. 2009). When this court states that it "does not reach" an issue in order to resolve a case under a narrower test, or when it assumes arguendo that a claim is cognizable, only to reject that the facts pled support the claim, such rulings do not implicitly reach or rule on the pretermitted issue. Because the decision was expressly unqualified, and because it was unpublished and therefore non-precedential, *Puente* adds nothing to the instant case's analysis.